**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| DJ Coleman, Inc. | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION TO EXCLUDE** |
| | ) | **TESTIMONY OF DR. BRIAN JENKS** |
| vs. | ) | |
| | ) | Case No. 1:08-cv-051 |
| Nufarm Americas, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's "Motion to Exclude Testimony of Brian Jenks" filed on February 4, 2010. See Docket No. 76. The Plaintiff filed a response in opposition to the motion on February 18, 2010. See Docket No. 81. For the reasons set forth below, the Court denies the Defendant's motion in limine.

**I.    BACKGROUND**

This is a products liability action arising out of damage to the plaintiff's, DJ Coleman, Inc.'s, sunflower crop in 2007. DJ Coleman alleges that the crop damage was caused by the herbicide Assert® which is manufactured by the defendant, Nufarm Americas, Inc. The witness that is the subject of the pending motion is a weed scientist.

**II.    STANDARD OF REVIEW**

Rule 701 of the Federal Rules of Evidence governs the admission of opinion testimony by lay witnesses. Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding

>of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[1]

"A witness may provide lay opinion testimony 'about facts within his or her range of generalized knowledge, experience, and perception.'" US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 690 (8th Cir. 2009) (quoting United States v. Espino, 317 F.3d 788, 797 (8th Cir. 2003)). "'While the ordinary rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the [c]ourt may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience.'" Espino, 317 F.3d at 797 (quoting United States v. Oliver, 908 F.2d 260, 264 (8th Cir. 1990)). "Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001).

### III.     LEGAL DISCUSSION

Nufarm moves to exclude "the exhibits, reports, studies, PowerPoint presentations, opinions and deposition testimony" of Dr. Brian Jenks "that are related in any way to scientific opinions or conclusions or testing results, and to exclude Jenks from participating further in this case as to these matters." See Docket No. 76. Nufarm contends that Dr. Jenks's testimony is inadmissible because he has no personal knowledge of the state or condition of DJ Coleman's 2007 sunflower crops and was not disclosed as an expert witness to testify on such matters.

---

[1] Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony.

DJ Coleman has designated Dr. Jenks as a lay witness in this case under Rule 701.  Dr. Jenks has been a weed scientist for North Dakota State University (NDSU) for the last eleven years.  See Docket No. 30-8, p. 2.  He has a bachelor's and master's degree in agronomy from Utah State University and a doctorate from the University of Nebraska.  See Docket No. 30-8, p. 2.  Dr. Jenks is stationed at NDSU's Research Extension Center in Minot, North Dakota.  As part of his duties as a weed scientist, Dr. Jenks conducts research on crop varieties and pest management (insects, diseases, and weeds).  See Docket No. 30-8, p. 2.

Dr. Jenks is familiar with the herbicide Assert® and has used it in his studies on sunflowers to control wild mustard:

| | |
|---|---|
| Q. [Counsel for Nufarm]: | What about – what's efficacious mean, the term you just used. |
| A. [Dr. Jenks]: | Okay.  Efficacious means, for example, that in the case of Assert, that it will control the weeds.  That it will control certain weeds.  It has a specific use intended.  And one of the ways that we use Assert is to control wild mustard or mustard species in sunflower.  And so by efficacious, meaning – means that it will give satisfactory control of that weed. |
| Q. [Counsel for Nufarm]: | And why Assert and not 2,4-D or something else? |
| A. [Dr. Jenks]: | Sunflower is very sensitive to many herbicides, and Assert is really the only herbicide that can be applied postemergence to control wild mustard.  All other herbicides will cause too much injury to sunflower. |
| Q. [Counsel for Nufarm]: | So the sunflowers essentially metabolize the active ingredient sufficiently so that it doesn't cause damage, the mechanism, the mode of action? |
| A. [Dr. Jenks]: | Correct. |
| Q. [Counsel for Nufarm]: | And the weeds can't, mustard can't. |

    A. [Dr. Jenks]:                Correct.

    Q. [Counsel for Nufarm]:      Do you know the active ingredient in Assert?

    A. [Dr. Jenks]:                The active ingredient is imazamethabenz.

See Docket No. 30-8, p. 5.

In 2006, Dr. Jenks conducted a study on Assert® tank mixes to examine its effect on sunflowers. Dr. Jenks conducted the study for Valent, a company that manufactures the herbicide Select Max®. Dr. Jenks documented the results of his study and found that "where we had Assert we saw visual injury, deformed heads and about a 50 percent yield loss." See Docket No. 30-8, p. 7. Dr. Jenks testified that because of the damage noticed to the sunflowers in the 2006 study, he conducted a similar study in 2007 and determined that "[w]herever we had Assert we had approximately 60 percent deformed heads, which is exactly what we saw in 2006. And once again as far as yield, our yield was reduced about 50 percent." See Docket No. 30-8, p. 8. In 2008, Dr. Jenks conducted his own study on the effect of Assert® on sixteen varieties of sunflowers and observed "almost no injury." See Docket No. 30-8, pp. 13-14. Dr. Jenks testified that he contacted a representative at Nufarm, Al Oberembt, in 2006-2007 to report the damage that he observed to the sunflower trials and to determine if the damage was a widespread problem. See Docket No. 30-8, pp. 15-16.

Nufarm seeks to exclude the exhibits, reports, studies, PowerPoint presentations, opinions and deposition testimony of Dr. Jenks on the grounds that such evidence constitutes expert evidence. The fact that Dr. Jenks has expertise in weed control does not lead to the conclusion that he must be offered as an expert at trial. Dr. Jenks has opinions based on the results of his 2006, 2007, and 2008 sunflower studies in which he used the herbicide Assert®. Dr. Jenks was directly involved in

the studies and has personal knowledge of how the studies were conducted and the results of the studies.  DJ Coleman intends on calling Dr. Jenks as a lay witness to testify as to the cause of the crop damage observed in his 2006 and 2007 sunflower studies which is within his personal knowledge and is not speculative.  Jenks's causation testimony is admissible pursuant to Rule 701 of the Federal Rules of Evidence.  The Defendant's "Motion to Exclude Testimony of Brian Jenks" (Docket No. 76) is **DENIED**.

    **IT IS SO ORDERED.**

    Dated this 25th day of February, 2010.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court