**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| DJ Coleman, Inc. )<br>)<br>Plaintiff,  )<br>)<br>vs.   )<br>)<br>Nufarm Americas, Inc.,  )<br>)<br>Defendant.  ) | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE USE OF DOCUMENTS**<br><br>Case No. 1:08-cv-051 |

_____

Before the Court is the Defendant's "Motion to Exclude Use of Privileged Confidential Documents by Opposing Counsel" filed on September 29, 2009. See Docket No. 55. The Plaintiff filed a response in opposition to the motion on October 14, 2009. See Docket No. 64. For the reasons set forth below, the Court grants in part and denies in part the Defendant's motion in limine to exclude the use of certain documents.

The defendant, Nufarm Americas, Inc., moves to exclude the plaintiff's, DJ Coleman, Inc.'s, "use of or reliance on privileged, confidential documents" under Rules 502 of the Federal Rules of Evidence and the North Dakota Rules of Evidence. Nufarm contends that eight documents were inadvertently disclosed at the deposition of Nufarm's expert William Mahlburg as Exhibits 3, 7, 8, 9, 12, 13, 14, and 15. DJ Coleman contends that the documents are not privileged and, even if they are, the privilege has been waived because Nufarm disclosed the documents in discovery.

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Rule 502 of the Federal Rules of Evidence sets forth the guidelines for determining whether the attorney-client privilege is waived. Rule 502(b) provides:

    (b)    Inadvertent disclosure. When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:

        (1)    the disclosure is inadvertent;

        (2)    the holder of the privilege or protection took reasonable steps to prevent disclosure; and

        (3)    the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).[1]

The "attorney-client privilege" is "the protection that applicable law provides for confidential attorney-client communications." Fed. R. Evid. 502(g)(1).

In diversity actions, state law determines the existence and scope of the attorney-client privilege. Gray v. Bicknell, 86 F.3d 1472, 1482 (8th Cir. 1996). The North Dakota Supreme Court applies five factors in determining whether a document has lost its privilege through inadvertent disclosure: (1) reasonableness of precautions taken to prevent inadvertent disclosure; (2) number of inadvertent disclosures; (3) extent of the disclosure; (4) delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would be served by relieving a party of its error. Farm Credit Bank of St. Paul v. Huether, 454 N.W.2d 710, 723 (N.D. 1990) (citing Parkway Gallery Furniture, Inc. v. Kittinger/Pa. House Group, Inc., 116 F.R.D. 46 (M.D.N.C. 1987)).

The North Dakota Rules of Evidence also protect certain communications between an attorney and his client:

    (b)    General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client, if the communication was made:

---

[1] Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure addresses a situation where one party inadvertently discloses privileged material to the opposing party.

      (1)      between the client or a representative of the client and the client's lawyer or a representative of the lawyer,

      (2)      between the lawyer and a representative of the lawyer,

      (3)      by the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,

      (4)      between representatives of the client or between the client and a representative of the client, or

      (5)      among lawyers and their representatives representing the same client.

(c)      Who May Claim the Privilege. The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

N.D. R. Evid. 502(b), (c).

"[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co., 449 U.S. at 390. "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Id. at 389.

**Document 1**

The first document that Nufarm seeks to exclude is Exhibit 3 which is a facsimile cover sheet from Al Oberembt to David Feist dated November 12, 2007, with the following notation:

Dave:

Here is the letter that Coleman sent regarding crop loss. It appears in the letter that he confirms that he tank-mixed [t]he products. Will need to get back to him and I assume Gary will handle it. You have the pictures from this complaint that I gave you in Mitchell.

Al.

See Docket No. 57-1, p. 1. William Mahlburg testified that Al Oberembt is a salesman for Nufarm in North Dakota. See Docket No. 30-14, p. 97. Oberembt is also the Nufarm employee who Dr. Brian Jenks spoke with regarding the results of his 2006 and 2007 studies on Assert®. See Docket No. 30-8, pp. 15-16. David Feist is the product manager for Nufarm and is responsible for overseeing the sale of Assert®. See Docket No. 42-18. Nufarm has disclosed both Al Oberembt and David Feist as fact witnesses in its Rule 26(a)(1) disclosures. The document in question is not a communication with an attorney. The Court finds that Exhibit 3 is not protected by the attorney-client privilege. Nufarm's motion to exclude the use of Exhibit 3 is **DENIED**.

**Documents 2, 3, and 4**

The second, third, and fourth documents that Nufarm seeks to exclude are Exhibits 7, 8, and 9. See Docket No. 57-1, pp. 2-4. These are copies of Nufarm's Product Complaint Evaluation Forms prepared by Al Oberembt and faxed to David Feist. These exhibits establish Clark Coleman's initial customer complaint to Nufarm that Assert® damaged his 2007 sunflower crop. They were generated from Nufarm's electronic system in which complaints are routinely recorded. See Docket No. 30-14,

4

pp. 107-10. Exhibit 7 is the only exhibit (of the eight) that Henry Buckwalter discusses in his expert report. See Docket No. 57-2. The record is devoid of any evidence that Exhibits 7, 8, and 9 are communications with an attorney. The Court finds that Exhibits 7, 8, and 9 are not protected by the attorney-client privilege. Nufarm's motion to exclude Exhibits 7, 8, and 9 is **DENIED**.

**Document 5**

The fifth document that Nufarm seeks to exclude is Exhibit 12. See Docket No. 57-1, p. 5. Exhibit 12 is the second page of a two-page document which discusses Assert® complaints by Clark Coleman and another customer, Shawn McKiven. See Docket Nos. 57-1, p.5 and 65-3. It is not clear who prepared this document. The record is devoid of any evidence that Exhibit 12 is a communication with an attorney. The Court finds that Exhibit 12 is not protected by the attorney-client privilege. Nufarm's motion to exclude Exhibit 12 is **DENIED**.

**Document 6**

The sixth document that Nufarm seeks to exclude is Exhibit 13. See Docket No. 57-1, p. 6. Exhibit 13 is a memorandum from Al Oberembt to David Feist which is dated October 18, 2007. The memorandum provides:

> Dave:
>
> This is the information from the grower Shawn McKinon (sic) and the retailer Agriliance who sold him the chemical. As you can see, it would have been tough to fax, since some of the information is still hard to read.
>
> Like I said his Spartan numbers don't match with what he purchased, His Assert/generic Select/Crop Oil was purchased during the same time of the first application and no straight surfactant was purchased.

> From what I can tell his rate of Spartan based on gallons purchased was 3.5 oz, not 2.3 and if I was a betting man, I would say the Assert/Select/MSO product were sprayed as a T/M.
>
> Note:
>
> According to the Agriliance Agronomist, there was Spartan injury to sunflowers in that area this year. At 3.5 oz, he is on the high side.
>
> Pictures included. If you need more, I can revisit the field or get some from Mycogen.

See Docket No. 57-1, p. 6. This memorandum discusses the Shawn McKiven complaint. The record is devoid of any evidence that the memorandum is a communication with an attorney. The Court finds that Exhibit 13 is not protected by the attorney-client privilege. Nufarm's motion to exclude Exhibit 13 is **DENIED**.

**Document 7**

The seventh document that Nufarm seeks to exclude is Exhibit 14. See Docket No. 57-1, p. 7. Exhibit 14 is a hand-written document that contains information regarding the Shawn McKiven complaint. The record is devoid of any evidence that Exhibit 14 is a communication with an attorney. The Court finds that Exhibit 14 is not protected by the attorney-client privilege. Nufarm's motion to exclude Exhibit 14 is **DENIED**.

**Document 8**

The eighth document that Nufarm seeks to exclude is Exhibit 15. See Docket No. 57-1, p. 8. Exhibit 15 contains e-mail correspondence between Al Oberembt and Nufarm's attorney Gary Callahan. Exhibit 15 provides:

> Gary:

>He did mention that he had used Assert for 17 straight years with no issues. However in 2007 he used a soil applied product other than the normal Triflurilin type product. This was the first year he claims he had a problem. You may have this covered, in the questions, but since it was the first year for the soil applied (different) chemistry and injury is known to occur with that product. He definitely did do something different. Also sprayer contamination. Will need to find out all products that went through the sprayer used for sunflowers. He also had corn (conventional) Possibility that Accent/Accent Gold and a host of other SU's may have been in the sprayer???????????? My guess is his corn was sprayed prior to sunflowers??
>
>Can't think of anything else
>
>. . .
>
>Al: Here is the first set of discovery to Coleman. Please review and advise as to any changes you think appropriate or if I need to request additional information, ----- regards, Gary

See Docket No. 57-1, p. 8.

The Court finds that Exhibit 15 is clearly a communication with an attorney, Gary Callahan, for the purpose of facilitating the rendition of professional legal services. The purpose of the attorney-client privilege "is to encourage clients to make full disclosure of all favorable and unfavorable facts to their legal counsel." In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977). Exhibit 15 is exactly the type of communication that the attorney-client privilege is intended to protect.

The Court must next determine whether Nufarm waived the privilege. To determine whether the privilege was waived, the Court must apply the five factors set forth in Farm Credit. First, Nufarm could have taken greater precautions to ensure that it did not disclose Exhibit 15 to opposing counsel. Second, Nufarm apparently produced 850 pages of documents in this case. This is not a case in which the document was produced as part of a voluminous production. See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985) (holding that the privilege was not waived when 22 privileged documents were mistakenly produced along with 16,000 other documents). Third, the extent of disclosure is potentially significant. The e-mail discusses the possible causes for

the damage to DJ Coleman's 2007 sunflower crop.  Fourth, Nufarm became aware of the inadvertent disclosure on May 28, 2009, during William Mahlburg's deposition.  During the deposition of Mahlburg, counsel for Nufarm objected to the use of Exhibit 15, stating, "This was not meant to be given to you and I don't know how it got in the mix.  This is obviously a privileged document . . . . So what I'm going to ask is that if you have documents in here that you know are privileged, I'd like them returned, which is what we agreed to."  See Docket No. 30-14, p. 118.  Counsel for Nufarm sent DJ Coleman's counsel a letter dated June 30, 2009, requesting the return of Exhibit 15.  See Docket No. 42-13.  Counsel for Nufarm attempted to rectify the disclosure as soon as he became aware of it.  Fifth, the facts present a close case but the Court believes that relieving Nufarm of its error under the circumstances is consistent with the purpose of the attorney-client privilege which is designed for the client's benefit and generally advances the overriding interests of justice.  Nufarm's motion to exclude the use of Exhibit 15 is **GRANTED**.

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the Defendant's "Motion to Exclude Use of Privileged Confidential Documents by Opposing Counsel" (Docket No. 55).  The Court **GRANTS** the Defendant's motion to exclude Exhibit 15, and **DENIES** the Defendant's motion to exclude Exhibits 3, 7, 8, 9, 12, 13, and 14.

**IT IS SO ORDERED**.

Dated this 25th day of February, 2010.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court